UNITED STATES TAXI CORPORATION, Appellant, *v.* MOGUL FINANCE CORPORATION, Respondent.

First Department, April 24, 1931.

*Herman Shulman* of counsel [*Benjamin Algase* with him on the brief; *Nathan Kelmenson,* attorney], for the appellant.

*Samuel H. Kaufman* of counsel [*Sylvester Pindyck* with him on the brief; *Feiner & Skutch,* attorneys], for the respondent.

MARTIN, J. The plaintiff brought this action under section 80-e of the Personal Property Law (as added by Laws of 1922, chap. 642, known as the Uniform Conditional Sales Act) to recover not less than twenty-five per cent of the amount paid on the purchase price on 100 taxicabs as liquidated damages, because of the failure of the defendant to comply with sections 78 and 79 of the Personal Property Law, as thus added, after retaking the taxicabs, in that the taxicabs were not resold within thirty days after the alleged repossession; they were not stored for ten days after the alleged repossession, and they were not sold at public auction. The judgment appealed from dismissed the complaint upon the merits.

The plaintiff corporation was organized in the year 1922, to conduct a taxicab business in New York city. Between January, 1923, and June, 1924, the plaintiff purchased from the Checker Cab Manufacturing Corporation 100 Checker taxicabs. Each taxicab was purchased under a separate conditional sales contract, the terms of which were identical. The purchase price was $2,914.30 per cab, payable $500 upon delivery, the balance in eighteen monthly installments, the first seventeen of $134 each and the eighteenth of $136.30. The deferred payments were evidenced by negotiable promissory notes.

Title to the taxicabs was retained by the original vendor until payment of the full purchase price. The sale of the taxicabs was financed by the defendant finance company. Shortly after the conditional sales contracts were entered into the notes of the plaintiff were indorsed by the Checker Cab Manufacturing Corporation and delivered to the defendant and the contracts, together with the Checker Cab Manufacturing Corporation's interest in the taxicabs, was assigned to the defendant. The cash payments were made by the plaintiff to the Checker Cab Manufacturing Corporation and the installments as they matured were paid to the defendant.

The November installments aggregating $13,400 were not paid until December, 1923, and the installments for December were not paid until January, 1924. The situation became so pressing that meetings of the stockholders were held to discuss the situation. The management of the plaintiff organization was criticised and it was the consensus of the stockholders' opinion that a change should be made in the management.

Meanwhile, after the plaintiff had defaulted in its November,

1923, installments, Henry Weiss, one of its stockholders and directors and a distributor in the Metropolitan district for the Checker Cab Manufacturing Corporation, had a talk relative to plaintiff's affairs with a Mr. Markin, the president of the Checker Cab Manufacturing Corporation. At the suggestion of Mr. Markin the witness Weiss told the plaintiff's stockholders that they should employ the services of an expert operator to supersede its present management and to assume control of the operation of the cabs. Neither Max Sommerfeld nor David Charak, who were then directing the plaintiff's business, had any previous training in the taxicab business.

The stockholders approved of the recommendation of Weiss and Markin and the services of Messrs. Lamberson and Brewster, two employees of the Checker Cab Manufacturing Corporation, were secured by the plaintiff to manage and operate the taxicabs. Mr. Lamberson had been in the employ of the Checker Cab Manufacturing Corporation as an expert engineer, assisting in the management and operation of companies to which the Checker Cab Manufacturing Corporation had sold taxicabs. On February 5, 1924, Messrs. Lamberson and Brewster entered the plaintiff's employ and took over the management of the business.

At the suggestion of Mr. Lamberson a new operating company, known as the L. & B. Operating Company, was formed. It was never actually incorporated but the leases to the S. & M. Operating Company, the old company, were canceled and new leases prepared by counsel for the Checker Cab Manufacturing Corporation were executed between the plaintiff and the L. & B. Operating Company. Messrs. Lamberson and Brewster continued the operation of the cabs at the Seventieth street garage and Messrs. Charak and Sommerfeld, who had been receiving salaries of $150 per week, objected. They obtained forty of the cabs for their own use. These cabs represented their interest in the plaintiff corporation. These cabs were removed to Larney's garage and both Charak and Sommerfeld operated them. Each paid the sum of $2,000 toward the obligations due on the cabs. Lamberson and Brewster operated the remaining sixty cabs, but their operation was not successful and the stockholders held a meeting in March, 1924, at which time they removed Lamberson, sent the remaining sixty cabs to Larney's garage and Larney operated them and out of the proceeds of the operation made small payments to the defendant.

On March 11, 1924, formal agreements were drawn between Sommerfeld and the defendant, and Larney and the defendant, by the terms of which the purchase of forty cabs by Sommerfeld and sixty cabs by Larney was formally effected.

On April 23, 1924, the defendant, after giving a notice of sale,

held what purported to be an auction sale. It sold the cabs on that day in an attempted compliance with the statute requiring the sale within thirty days after repossession. The sale was conducted from the office of the defendant corporation.

The facts set forth herein show the informal manner in which these taxicabs were dealt with by all the parties having any interest therein. Although there is no doubt that this course was followed in an effort to make a success of the business, and secure an amount sufficient to pay for the cabs, nevertheless, in so doing there was a complete failure to comply with the provisions of the Uniform Conditional Sales Act. The taxicabs were never stored as required by section 78 of the Personal Property Law and were not sold at public auction within thirty days after the date of repossession as required by section 79.

The plaintiff contends that because of the failure to comply with the provisions of the Personal Property Law, after repossession of the taxicabs, it is entitled to the relief demanded in the complaint. The defendant conceded that the taxicabs were repossessed because of non-payment, but contended that they were not repossessed until March twenty-fourth and that since the sale took place on April twenty-third, there was a compliance with the statute. The documentary evidence is proof to the contrary. It recites there was repossession before that date.

The defendant also argued that it was relieved from complying with the provisions of the Personal Property Law by reason of the acts and conduct of the plaintiff in consenting to the sale to Sommerfeld, Charak and Larney and it is argued that the plaintiff was estopped from pleading the defendant's non-compliance with the provisions of the statute. The defendant says that the plaintiff by virtue of the provisions of defendant's Exhibit " B " agreed to the procedure adopted in the disposition and sale of the taxicabs and that by the terms of. that agreement compliance with the statute was waived.

The trial court directed a verdict for the defendant, holding in effect that there was no issue of fact presented for the jury's consideration.

On the argument it was admitted that there was a failure to comply with the provisions of the Uniform Conditional Sales Act. Irrespective of such admission the record discloses that there was a failure to comply therewith. (*Manhattan Taxi Service Corp.* v. *Checker Cab Mfg. Corp.*, 253 N. Y. 455.)

The agreements relied upon by defendant, known as defendant's Exhibits " B " and " C," not only fail to waive compliance with

any of the provisions of the Uniform Conditional Sales Act but assume that there will be a compliance therewith.

Defendant's Exhibit " B," dated March 24, 1924, provides as follows:

" WHEREAS, the undersigned United States Taxi Corporation has defaulted in provisions of said notes and has failed to observe the payments of said contracts of conditional sale, and

" WHEREAS, accordingly said one hundred (100) taxicabs were duly repossessed on or about the *11th day of March, 1924,* and arrangements have been made for the sale of the same or the acquisition of the same, being sixty (60) thereof by William A. Larney and forty (40) thereof by Max Sommerfeld by two certain agreements both dated March 11th, 1924, one between Mogul Finance Corporation, party of the first part, William A. Larney, party of the second part and Checker Cab Manufacturing Corporation, party of the third part, the other between Mogul Finance Corporation, party of the first part, Max Sommerfeld, party of the second part, Checker Cab Manufacturing Corporation, party of the third part, and William A. Larney, party of the fourth part, and

" WHEREAS, said contracts both provide for the operation of said taxicabs by said William A. Larney up to the time of *the sale of said taxicabs at public sale* and for the application of the net proceeds of the operation of said taxicabs in reduction of the said notes given for the purchase price thereof as more particularly in said two contracts set forth, the said contracts having been exhibited to and examined by the undersigned United States Taxi Corporation,

" Now, therefore, the said *United States Taxi Corporation* does hereby agree and consent to the privilege to said *Mogul Finance Corporation* and said Checker Cab Manufacturing Corporation to place said taxicabs or a part thereof, in the care and custody of said William A. Larney, and that said taxicabs may be operated by said William A. Larney and net proceeds of said operation applied in reduction of said notes for the purchase price thereof *until the time of said public sale,* all as in said two agreements above described, dated March 24th, 1924, provided."

In addition to reciting in this agreement that the taxicabs were duly repossessed on or about the *11th day of March, 1924,* it further provides that they are to be *sold at public auction.*

Defendant's Exhibit " C," dated March 11, 1924, provides for the sale at *public auction in the city of New York of the taxicabs when repossessed,* and throughout this agreement the recitals indicate an attempt to comply with the provisions of the Uniform Conditional Sales Act. Evidence of waiver is not alone absent, but the documentary proof conclusively establishes an intention not to waive.

The finding of compliance with the Uniform Conditional Sales Act or a waiver of the terms thereof cannot be sustained on the record before us. The facts clearly indicate that there was neither a compliance nor a waiver.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.